UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL MILLER and DAWN
MILLER,

      Plaintiffs,

v.                                                    Case No.:   2:24-cv-822-SPC-DNF

NATIONAL FIRE & MARINE
INSURANCE COMPANY,

      Defendant.

---

## OPINION AND ORDER

Before the Court is Defendant National Fire & Marine Insurance Company's Motion for Partial Summary Judgment. (Doc. 63). Plaintiffs Michael and Dawn Miller responded (Doc. 67), and Defendant replied.[1] (Doc. 70). For the reasons below, the Court grants the motion.

## Material Facts

This is an insurance coverage recovery action. Defendant issued an insurance policy ("Policy") to Plaintiffs providing coverage for real property

---

[1] The Court notes two issues with Plaintiffs' filings. First, Plaintiffs' response to Defendant's motion does not separate its memorandum of law and exhibits. This is improper, as the Civil Action Order mandates that "[d]ocuments that accompany a paper must be filed as separate PDF files[.]" (Doc. 3 at 7). Second, Plaintiffs filed a sur-reply without leave of Court. This is also improper. *See, e.g.*, *Downing* v. *Waste Mgmt., Inc. of Fl. et al.*, No. 8:25-CV-2705-KKM-AAS, 2026 WL 472316, at *1 n.1 (M.D. Fla. Feb. 19, 2026) (filing a sur-reply without leave violates M.D. Fla. R. 3.01(e)). The Court declines to strike Plaintiffs' filings, but notes that future non-compliant filings may be stricken.

located in Fort Myers Beach ("Property").  The Policy covered the Property from March 27, 2022, to March 27, 2023.

The Policy includes an anti-concurrent causation clause that excludes coverage for any loss "caused directly or indirectly" by flood or surface water. (Doc. 63 at 2–4).  The Policy defines flood and surface water as:

> (1) Flood; (2) Surface water, water accumulated outside of a building or structure, including but not limited to standing or ponding water, waves, including tidal wave and tsunami, tides, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; **including storm surge**; (3) Run-off of water from any surface; or (4) Water-borne material carried or otherwise moved by any of the water referred to in e.(1). to e.(3) of this Exclusion.[2]

(*Id.* at 3) (emphasis added).  Losses caused by flood or surface water are excluded from coverage "regardless of any other cause or event contributing concurrently or in any sequence to the loss."  (*Id.*).

On or about September 28, 2022, Hurricane Ian made landfall in Florida. Flooding and storm surge impacted the first floor and the detached garage of the Property.  Shortly afterward, Plaintiffs reported their damages from Hurricane Ian to Defendant.  Defendant retained an engineer, Brian J. Sattler, P.E., to inspect the Property to determine the cause and origin of the reported damages.  Sattler conducted his inspection on October 19, 2022.  According to

---

[2] The Policy also defines "Hurricane."  (Doc. 63 at 4).  The parties agree that the storm event that affected the Property on the date of loss qualifies as a hurricane.

Sattler, the Property experienced over seven feet of storm surge from Hurricane Ian on the date of Plaintiffs' loss.  Sattler prepared a report outlining his findings and conclusions regarding the loss.  (Doc. 63-3).  In his report, Sattler concludes that storm surge damaged the ground floor of the Property.  (*Id.* at 9).

Defendant issued a coverage payment to Plaintiffs on January 5, 2023, for wind-related damages, resulting in a net claim payment of $285,618.38 to Plaintiffs after applying the Policy's hurricane deductible.  Later, Defendant retained a second engineer, Kiet Nguyen, P.E., to reinspect the Property. Nguyen reinspected the property on May 2, 2023, and subsequently prepared a report discussing his findings regarding damage to the Property.  (Doc. 63-6).  Nguyen also concludes that storm surge affected the Property.  (*Id.* at 4). After the reinspection, Defendant issued a supplemental payment letter to Plaintiffs on or about September 21, 2023, resulting in an additional net payment of $31,364.511.

Plaintiffs retained their own engineer, Eric F. Trillas, P.E., to give an opinion on the cause of the loss to the Property.  Trillas prepared a report detailing his findings.  (Doc. 63-9).  Trillas opined that storm surge in part damaged the Property.  (*Id.* at 39).

Defendant now moves for partial summary judgment.  It argues that coverage for the first floor and detached garage of the Property is barred under

the Policy's anti-concurrent causation provision because both flood/storm surge and wind concurrently caused those damages.

**Legal Standard**

Sitting in diversity, the Court applies Florida substantive and federal procedural law. *See Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). Summary judgment is appropriate when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law on the applicable claims. Fed. R. Civ. P. 56(c). The movant has the initial burden to identify evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). It is not enough for the non-movant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most

4

favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson Cty. Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

## Discussion

The parties agree that the Policy's anti-concurrent causation provision is legally enforceable and bars recovery for flood and storm surge damages.[3] That said, the provision's validity is not the relevant inquiry. "Rather, the question is whether the anti-concurrent causation provision applies" to the

---

[3] "An anti-concurrent cause provision is a provision in a first-party insurance policy that provides that when a covered cause and non-covered cause combine to cause a loss, all losses directly and indirectly caused by those events are excluded from coverage." *Citizens Prop. Ins., Corp. v. Salkey*, 260 So. 3d 371, 374 (Fla. Dist. Ct. App. 2018) (citation omitted). Anti-concurrent causation provisions are routinely used and upheld by courts. *See, e.g.*, *Sec. First Ins. Co. v. Czelusniak*, 305 So. 3d 717, 719 (Fla. Dist. Ct. App. 2020) (upholding anti-concurrent causation provision); *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1318 (M.D. Fla. 2002) ("The question then becomes whether parties can contract around this default [concurrent cause] doctrine through anti-concurrent cause language. This must be answered in the affirmative.").

current dispute. *Baltzer v. Safety Specialty Ins. Co.*, No. 2:23-CV-999-SPC-KCD, 2025 WL 676251, at *2 (M.D. Fla. Mar. 3, 2025). On that question, there is disagreement. The parties disagree whether Plaintiffs seek payments for damages to the first floor of the Property caused by flood and/or storm surge. If Plaintiffs seek coverage payments for damages caused by both wind and flood/storm surge, then the Policy's anti-concurrent causation provision bars recovery.

Defendant argues no genuine dispute of material fact exists whether flood and/or storm surge caused damage to the first floor and detached garage of the Property. In its statement of undisputed material facts ("SUMF"), Defendant asserts that "Flood and/or storm surge waters impacted the entire first floor throughout the Property and the first floor of the detached garage, as there was over seven (7) feet of water inside the interior." (Doc. 63 at 5). Plaintiffs admitted this fact in their response. (Doc. 67 at 2).

Defendant offers the opinions and reports of its experts, Sattler and Nguyen, to show the flooding and storm surge water caused damage to the ground floor and detached garage. Sattler states in his declaration that storm surge and wind both caused damage to the first floor of the Property:

> [I]n my professional, expert opinion, while winds sufficient to damage the roofing components of the building were present during Hurricane Ian, the storm surge and associated wave action acting concurrently were the cause of damages to the ground-floor interior finishes, exterior

6

> lighting fixtures, fencing, roll down screens, and docks at
> the Property.

(Doc. 63-4 ¶ 9). Sattler's expert report reflects the same conclusions. (Doc. 63-3 at 6, 9) (stating that storm surge "inundate[ed] the ground floors"). And Nguyen offers a substantially similar conclusion that flood and storm surge damaged the first floor of the Property. (*See* Doc. 63-7 ¶¶ 10, 11) ("[I]t is my professional opinion . . . that the . . . damages I observed at the Property specifically, through the ground level and detached garage were caused by storm surge and/or flooding.").

Defendant finally points to testimony by Plaintiffs and their causation expert that flood and/or storm surge concurrently caused damage to the ground floor of the Property. (Docs. 63 at 17). Plaintiff Michael Miller testified at his deposition that the interior of the ground floor "essentially flooded" from storm surge from Ian. (Doc. 63-2 at 28). Similarly, Trillas testified that flood and storm surge damaged the ground floor of the Property and detached garage. (*See* Doc. 63-10 at 73) ("Q: the first – the ground level of the main dwelling and the detached garage, those were all damaged due to flood and storm surge, correct? A: Correct. Yes."). His report also reflects that storm surge damaged the Property concurrently with wind. (*See* Doc. 63-9 at 39) ("It is our opinion that the wind forces **and** storm surge forces imposed on the structure by Hurricane Ian . . . were enough to damage the building envelope's integrity to

7

the type and manor [sic] found during our investigation.") (emphasis added). Trillas' report also contains a table that lists storm surge specifically as a type of damage caused to the ground floor and detached garage of the Property. (*Id.* at 17). Defendant argues, based on this evidence, there is no genuine issue of material fact that the anti-concurrent causation provision bars coverage for those areas of the Property.

In response, Plaintiffs contend they only seek recovery for damages caused by wind. Plaintiffs point to a damages estimate for the Property prepared by Chris Pakuris of Florida State Construction Services Corp. ("FSCS"). (Doc. 63-11). Plaintiffs attach an affidavit from Pakuris stating that the FSCS estimate "included repairs related to wind damage only. No repairs for flood and/or surge were included within my estimate of damages."[4] (Doc. 67 at 9). Plaintiffs argue that the Court should deny summary judgment because a dispute of material fact exists whether the damages in the FSCS estimate are due to wind alone.

Plaintiffs do not meet their burden to demonstrate a genuine issue of material fact exists. Plaintiffs do not offer Pakuris as a causation expert. As best the Court can surmise, Pakuris is offered only as a damages expert.[5]

---

[4] Defendant asserted in its SUMF that the FSCS estimate "includes repairs to damages attributable to flood and/or storm surge." (Doc. 63 at 8). This is the sole fact from Defendant's SUMF that Plaintiffs dispute. (Doc. 67 at 2, 3).

[5] Plaintiffs only characterize Pakuris in their response as a "Florida General Contractor." (Doc. 67 at 5).

Therefore he cannot opine at trial on the *cause* of the damages to the Property.[6] So the FSCS estimate is just an assessment of damage, it is not evidence that wind alone caused damage to the disputed areas of the Property. Tellingly, Plaintiffs do not respond to Defendant's experts, or the arguments regarding Trillas' report and testimony. The Court finds that all three causation experts agree flood and/or storm surge concurrently caused damage to the ground level of the Property. So this case is not a "battle of the experts, requiring the factfinder to resolve the issues upon which the experts differ." *Tower Hill Prime Ins. Co. v. Bermudez*, 388 So. 3d 165, 169 (Fla. Dist. Ct. App. 2023) (quotation omitted), *reh'g denied* (Jan. 19, 2024). And Plaintiffs provide no other record evidence that damages to the disputed areas of the Property are attributable to wind alone. In sum, there is copious record evidence to support Defendant's argument, and Plaintiffs do not meet their burden under Rule 56 to rebut it.

Because Plaintiffs fail to present a genuine issue of material fact, the Court grants partial summary judgment to Defendant. Under the anti-concurrent causation provision, Plaintiffs may not recover for damages to the ground floor or the detached garage of the Property. This ruling does not

---

[6] Defendant correctly points out in its reply that Pakuris' deposition testimony is inconsistent with his affidavit. Pakuris asserts that all damages in the FSCS estimate are solely caused by wind. Yet at his deposition Pakuris testified that both wind and storm surge caused at least one of the line items listed in it. (Doc. 70 at 3).

foreclose Plaintiffs from recovering for damages to other areas of the Property caused by wind alone.

Accordingly, it is

**ORDERED:**

1. Defendant National Fire & Marine Insurance Company's Motion for Partial Summary Judgment (Doc. 63) is **GRANTED**.

2. The Court refers this case to a settlement conference with United States Magistrate Judge Nicholas P. Mizell.

3. The Court suspends all upcoming deadlines in the scheduling order (Doc. 45). The Court will issue an Amended Case Management and Scheduling Order by separate notice.

**DONE** and **ORDERED** in Fort Myers, Florida on March 9, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

10